# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| IN RE: | C/A No. 18-01736-JW |
| Lynn Stephens, | Chapter 13 |
| Debtor. | **ORDER** |

This matter comes before the Court upon PYOD LLC's ("PYOD") Objection to Confirmation ("Objection") of the chapter 13 plan, as modified, filed by Lynn Stephens ("Debtor"). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. After considering the record and the arguments made by the parties at a hearing, the Court makes the following findings of fact and conclusions of law.[1]

## FINDINGS OF FACT

1. On October 27, 1999, Debtor executed a loan agreement with Associates Financial Services Company in the amount of $52,129.19 ("Loan Agreement"). Also on October 27, 1999, Debtor executed and delivered a mortgage ("First Mortgage") on the property located at 3106 Spring Hill Road in Dalzell, South Carolina ("Principal Residence"). Associates Financial Services Company thereafter assigned the First Mortgage to CitiMortgage, Inc. on February 21, 2018.

2. On July 25, 2001, Debtor executed a Home Credit Line Agreement and Disclosure Statement to Capital One Bank, FSB ("Credit Line Agreement"). The Credit Line Agreement states that Debtor is also giving a mortgage that covers Debtor's Principal Residence ("Second Mortgage").

---

[1] To the extent any of the following findings of facts are conclusions of law, they are so adopted, and to the extent any of the following conclusions of law are findings of fact, they are so adopted.

3. On April 4, 2018, Debtor filed a petition for relief under chapter 13 of the Bankruptcy Code.

4. With the petition, Debtor also filed schedules and statements. In Schedule A, Debtor indicates that the value of the Principal Residence is $45,000. In Schedule D, Debtor indicates that CitiMortgage, Inc. holds a claim in the amount of $46,907.10 secured by the First Mortgage to the extent of $45,000, the value of Debtor's Principal Residence, with any remaining claim being unsecured. Debtor also indicates that Shellpoint Mortgage has a claim in the amount of $5,242.06 based on the Credit Line Agreement and Second Mortgage. In the Schedules, Debtor asserts that the claim is unsecured as there is no value in the Principal Residence above CitiMortgage's First Mortgage.

5. Also on April 4, 2018, Debtor filed a proposed chapter 13 plan, which provided for the valuation of the Second Mortgage claim pursuant to 11 U.S.C. § 506. Specifically, Debtor values the secured claim at $0.00 because there is no value in the Principal Residence above the claim of the First Mortgage. Therefore, under the plan, Debtor treats the Second Mortgage claim as wholly unsecured. The April 4, 2018 plan also provides in Part 1 that "[f]ailure to object may constitute an implied acceptance of and consent to the relief requested in [the plan]."

6. On April 4, 2018, the Court issued a Notice of Chapter 13 Bankruptcy Case, which scheduled a confirmation hearing for June 26, 2018. The Notice provides that: "[a]ny objection to confirmation of the chapter 13 plan must be filed and served at least seven days prior to the confirmation hearing." Therefore, any objection to the April 4, 2018 chapter 13 plan was due no later than June 19, 2018.

7. On June 12, 2018, CitiMortgage Inc. timely filed a proof of claim indicating it had a secured claim in the amount of $47,092.31 secured by the First Mortgage. This claim was

subsequently assigned to U.S. Bank Trust NA, as Trustee for Towd Point Master Funding Trust 2018-PM10 on September 12, 2018.

8. On June 13, 2018, Shellpoint Mortgage Servicing ("Shellpoint") as servicer of the debt on behalf of PYOD filed a proof of claim indicating that PYOD holds a secured claim in the amount $12,332.14 based on the Second Mortgage.[2]

9. While several parties filed timely objections to the confirmation of the plan filed on April 4, 2018, neither Shellpoint Mortgage nor PYOD did.

10. The Court held a confirmation hearing on June 26, 2018. At the hearing, the Court entered, upon the request of the Trustee, an order denying confirmation of the plan as filed and providing Debtor ten days to file a modified chapter 13 plan.

11. On June 28, 2018, Debtor filed a pre-confirmation modified chapter 13 plan. The June 28, 2018 modified chapter 13 plan did not modify the treatment and valuation of the Second Mortgage claim of PYOD. In addition to the modified chapter 13 plan, Debtor filed a Notice of Confirmation Hearing, scheduling a further confirmation hearing for August 1, 2018. The Notice of Confirmation Hearing indicated that "[a]ny objection to confirmation of the chapter 13 plan must be filed with the Court . . . and served . . . at least seven days prior to the confirmation hearing[,]" which, in this instance, would be due no later than July 25, 2018. No objection was filed by PYOD, Shellpoint, or any other party to the June 28, 2018 modified plan by July 25, 2018.

12. On August 1, 2018, the continued confirmation hearing was held and continued further at the request of the Trustee to September 13, 2018. No further notice was sent pertaining to the continued confirmation hearing or addressing a deadline to object to the modified plan.

---

[2] The proof of claim filed by Shellpoint on behalf of PYOD does not include a copy of the Second Mortgage.

13.     On August 23, 2018, PYOD filed for the first time its Objection asserting that the value of the Principal Residence exceeded the amount of the claim for the First Mortgage, and, therefore, must be treated as a wholly secured claim due to the anti-modification provision of 11 U.S.C. § 1322(b)(2).

14.     Debtor filed a response to the Objection on September 10, 2018, alleging that the Objection was untimely.

15.     On September 13, 2018, the Court held a hearing on the confirmation of the Debtor's chapter 13 plan and the Objection. Pending a ruling on the Objection, the Court further continued the confirmation hearing to October 25, 2018, if necessary.

## POSITION OF THE PARTIES

Debtor asserts that PYOD's August 23, 2018 Objection is not timely and, therefore, should not be considered by the Court in determining if Debtor's proposed modified chapter 13 plan should be confirmed. Specifically, Debtor alleges that PYOD should have objected to the confirmation of the chapter 13 plan on or before June 19, 2018, the objection deadline for the initial chapter 13 plan (filed on April 4, 2018) if it opposed the valuation and treatment of its claim. In addition, Debtor asserts that PYOD failed to timely object to the same valuation and treatment provided in the June 28, 2018 modified plan. Since none of Debtor's pre-confirmation modified plans changed the valuation and treatment of PYOD's claim as provided in the initial plan, Debtor alleges that PYOD should be bound to that treatment pursuant to 11 U.S.C. § 1323(c).

PYOD alleges that each time the Court continued the confirmation hearing, it effectively extended the deadline for parties to object to confirmation of the chapter 13 plan. Therefore, PYOD alleges that its Objection was timely as it was filed more than seven days prior to the last continued

confirmation hearing. PYOD did not assert a lack of due process or service of the chapter 13 plan filed on April 4, 2018, the modified plan filed on June 28, 2018, or the notices related thereto.

CONCLUSIONS OF LAW

The issue before the Court can be determined by considering the application of 11 U.S.C. §§ 1325(a)(5) and 1323. In regard to allowed secured claims, section 1325(a)(5) of the Bankruptcy Code provides that, among other items, a court shall confirm the plan if "the holder of such claim has accepted the plan."

In addition, 11 U.S.C. § 1323 provides that:[3]

(a) The debtor may modify the plan at any time before confirmation, but may not modify the plan so that the plan as modified fails to meet the requirements of section 1322 of [the Bankruptcy Code].

(b) After the debtor files a modification under this section, the plan as modified becomes the plan.

(c) Any holder of a secured claim that has accepted or rejected the plan is deemed to have accepted or rejected as the case may be, the plan as modified [pre-confirmation], unless the modification provides for a change in the rights of such holder from what such rights were under the plan before modification, and such holder changes such holder's previous acceptance or rejection.

This Court and many courts from other districts have previously held that a secured creditor's failure to object to its treatment in a chapter 13 plan constitutes acceptance of the plan under § 1325(a)(5)(A). *See In re Crawford*, 532 B.R. 645, 650 (Bankr. D.S.C. 2015) ("creditor's silence can be interpreted as acceptance of its treatment under the plan" and citing a number of S.C. opinions); *Shaw v. Aurgroup Fin. Credit Union*, 552 F.3d 447, 457 (6th Cir. 2009) ("[F]ailure to object constitutes acceptance of the plan."); *In re Jones*, 530 F.3d 1284, 1291 (10th Cir. 2008) ("[T]he failure to object constitutes acceptance of the plan."); *In re Szostek*, 886 F.2d 1405, 1413

---

[3] Further citations to the Bankruptcy Code (11 U.S.C. § 101, et al.) shall be by section number only.

(3rd Cir. 1989) ("The general rule is that the acceptance of the plan by a secured creditor can be inferred by the absence of an objection."); *In re Flynn*, 402 B.R. 437, 443–44 (1st Cir. B.A.P. 2009) ("We adopt the Third Circuit's view that acceptance may occur upon a secured creditor's failure to file a timely objection to a chapter 13 plan."); *In re Carr*, 584 B.R. 268, 275 (Bankr. N.D. Ill. 2018) ("A majority of courts consider section 1325(a)(5)(A) to be satisfied as to the debtor's secured creditors where secured creditors have proper notice and no secured creditor is objecting."); *In re Rosa*, 495 B.R. 522, 524 (Bankr. D. Haw. 2013) ("The Ninth Circuit and the overwhelming majority of courts hold that a secured creditor's failure to object to a chapter 13 plan constitutes acceptance.").[4] Recognizing a secured creditor's failure to timely object as acceptance is necessary to give meaning to the language of §§ 1323(c) and 1325(a)(5) because, unlike in chapter 11 where creditors accept or reject a plan by ballots, in chapter 13 cases, there is no mechanism for creditors to accept or reject a plan. Therefore, § 1325(a)(5)'s reference to "accepting" a plan must mean that a creditor's silence (by not timely filing a timely objection to a plan after notice) constitutes acceptance of the plan. Furthermore, the language of Part 1 of the initial plan in this case explicitly warns PYOD that its failure to timely object may be considered an acceptance by the Court. Once a holder of a secured claim has accepted a plan, the plain language of § 1323(c) appears to reasonably lock in the secured creditor's decision for subsequent modified plans as long as that creditor's treatment is not changed.

---

[4] The leading treatise on chapter 13 practice has further elaborated on the importance of objection deadlines in the confirmation process: "The deadlines for objecting to confirmation have to mean something, else it is impossible for debtors and trustees to prepare for hearings on confirmation. The creditor that misses a deadline to object has only itself to blame and has no reasonable expectation that the court or any other party will save it from its neglect." Keith M. Lundin & William H. Brown, *Chapter 13 Bankruptcy*, 4 ed., § 220.1 at ¶ 10, Sec. Rev. June 11, 2004, www.Ch13online.com; see also *Szostek*, 886 F.2d at 1414 ("Otherwise, [the rules], which set a deadline for filing objections to a plan, would have no substance.").

6

The facts of the present matter are nearly identical to the Court's prior opinion in *In re Turner*, C/A No. 10-03358-JW, slip op. at 2–3 (Bankr. D.S.C. Sept. 21, 2010).[5] In *Turner*, the debtor filed an initial plan that valued a second mortgage creditor to $0 because there was no equity in the property above the balance due to the first mortgage creditor. *Id.* at 2. After service of the initial plan and notice of the objection deadline, the second mortgage creditor did not object by the deadline. *Id.* After the objection deadline passed, the debtor filed a pre-confirmation amended plan that did not modify the treatment of the second mortgage creditor. *Id.* The second mortgage creditor then filed an objection to the amended plan disputing the debtor's valuation of its claim. *Id.* The Court held that by failing to file a timely objection by the deadline, the second mortgage creditor accepted the treatment provided in the initial plan, and pursuant to § 1323(c), was deemed to accept the amended plan. *Id.* at 3. Thus, the Court overruled the second mortgage creditor's objection to confirmation. *Id.*

In this case, PYOD did not allege that it did not receive adequate notice or service of the Debtor's initial proposed plan filed on April 4, 2018 or the first modified plan filed on June 28, 2018, nor did it present any evidence or justification for its failure to object by the applicable deadline.[6] By failing to file an objection to the confirmation by June 19, 2018, the deadline for

---

[5] This matter is also similar to *In re Thomas*, C/A no. 96-79381-W, slip op. (Bankr. D.S.C. July 11, 1997). In Thomas, a secured creditor challenging the valuation of its claim in a debtor's confirmed chapter 13 plan. *Id.* at 1. As part of its arguments challenging confirmation, the creditor alleged that the debtor's pre-confirmation amended plan provided a new opportunity to object, which it alleged it did by sending a letter to opposing counsel. *Id.* at 3. The Court rejected the secured creditor's arguments, finding that the amended plan did not modify the treatment of the secured creditor's claim. *Id.* at 8. Therefore, the amended plan did not create a new opportunity to object to the plan and the secured creditor's failure to object to the initially filed plan constituted acceptance to the plan as modified under § 1323(c). *Id.*

[6] The Court further notes that this case is distinguishable from *In re Gibson*, 556 B.R. 743 (Bankr. D.S.C. 2016) because in this case, the objection period concluded before the confirmation hearing was continued and the modified plan and notice were filed and served.

7

objections to the April 4, 2018 plan, PYOD accepted the treatment of its claim pursuant to § 1325(a)(5)(A).

In addition, PYOD did not voice an objection to the same treatment provided again in Debtor's pre-confirmation modified plan filed on June 28, 2018. Therefore, PYOD again acquiesced to the valuation of its claim at $0.00.

In response, PYOD asserts that the Court should follow the opinion of the Bankruptcy Court for the District of Arizona in *In re Ives*, 289 B.R. 726 (Bankr. D. Ariz. 2003). However, the present matter is readily distinguishable from *Ives*. In *Ives*, the debtor proposed to "strip down" a partially secured second mortgage. *Id.* at 727. Specifically, in the chapter 13 plan, the debtor proposed to pay $30,000, part of the second mortgage claim and the amount of equity in the collateral above the first mortgage debt. *Id.* at 727–28. The second mortgage creditor filed an objection five months after the objection deadline for the confirmation of the plan alleging that the Code prohibits a partial valuation or strip down of a claim secured by the debtor's principal residence under § 1322(b)(2). *Id.* The court in *Ives* held that "regardless of the untimeliness of the creditor's objection," the court itself had a responsibility to ensure a plan complies with the Bankruptcy Code, even in the absence of an objection. *Id.* Because of the prohibition from the modification of rights of holders of a claim secured only by the debtor's principal residence under § 1322(b)(2), the court found that the valuation or strip down of the second mortgage secured claim violated the Bankruptcy Code, and that the plan was not confirmable. *Id.* at 729–30. Importantly, the Court in *Ives* reached its holdings based upon its independent duty to determine confirmability.

While the plan in *Ives* involved a strip down or partial valuation of a second mortgage in violation of § 1322(b)(2) of the Bankruptcy Code, Debtor's plan proposes a total "strip off" or valuation at $0.00 of a secured claim because the Second Mortgage claim is wholly unsecured.

8

This strip off of a valueless secured mortgage claim is permitted under the Bankruptcy Code according to the Fourth Circuit Court of Appeals' ruling in *TD Bank, N.A. v. Davis (In re Davis)*, 716 F.3d 331 (4th Cir. 2013) (finding that the Bankruptcy Code permits the stripping off of valueless liens in chapter 13 proceedings on debtor's residence).[7] Since the present case involves a chapter 13 plan, which appears to be in compliance with the Bankruptcy Code and would not require the Court to use its independent authority to deny confirmation, the Court finds *Ives* to be distinguishable and unpersuasive in the present matter.

Finally, the Court observes that PYOD filed its objection to the modified plan well beyond the deadline set by the Court, over 140 days after Debtor first proposed to treat PYOD's claim as wholly unsecured. At the hearing, PYOD offered no evidence to justify its failure to timely object to the plan.

The law assists those who are vigilant, not those who sleep on their rights. To permit a party to sit back and wait to file an objection well after the deadline, on the eve of a continued confirmation hearing, would be in direct conflict with the policies of promoting an efficient and timely reorganization of a chapter 13 bankruptcy case, and would unfairly prejudice the debtor and other creditors.

Therefore, for the foregoing reasons, it is hereby:

---

[7] A "strip off" occurs when a secured creditor is made wholly unsecured under § 506 because there is no value in the collateral above the claims senior to it. On the other hand, a "strip down" refers to the bifurcation of a claim under § 506, in which the creditor holds a secured claim up to the value of the collateral, with the balance of the claim as unsecured. As the Fourth Circuit Court of Appeals indicated in *Davis*, a strip off is permitted under the Bankruptcy Code, but a strip down of a lien secured by a debtor's residence is not permitted due to the anti-modification provision of § 1322(b)(2). *See Davis*, 716 F.3d at 335–36.

ORDERED that PYOD's Objection is overruled. After considering this ruling, the Chapter 13 Trustee shall submit an appropriate proposed order regarding confirmation of the Modified Plan.

**AND IT IS SO ORDERED.**

Columbia, South Carolina
October 16, 2018

**FILED BY THE COURT**
**10/16/2018**



Entered: 10/16/2018

*/s/ John E. Waites*
US Bankruptcy Judge
District of South Carolina

10